Brendan Sweeney
Nicholas Bittner
Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, NY 10004
bsweeney@workingsolutionsnyc.com
nbittner@workingsolutionsnyc.com
*Attorneys For Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TONI SANTAMARIA,<br><br>               Plaintiff,<br><br>      -against-<br><br>VEE TECHNOLOGIES, INC. and PATRICK O'MALLEY.<br><br>               Defendants. | Civil Action No.: 1:22-cv-4472 (AS)<br><br>HON. ARUN SUBRAMANIAN |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**Table of Contents** ...................................................................................... i

**Table of Authorities** ................................................................................ ii

**Preliminary Statement** ........................................................................... 1

**Summary of Relevant Facts** ................................................................... 4

    I.     Defendants Misclassified Santamaria as An Exempt Employee ................................4

    II.    Defendants Terminated Santamaria for Requesting An Accommodation ..................4

**Argument** ...................................................................................................... 6

    I.     Relevant Standard ...............................................................................6

    II.    Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Disability Discrimination Claims ............................................................................7

        A.    There Is Sufficient Evidence in the Record to Establish a *Prima Facie* Case ................. 8

        B.    Multiple Disputed Issues of Fact Preclude Summary Judgment on the Issue of Whether Defendants' Explanations For Terminating Santamaria Are Pretextual. .............13

    III.    Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Claims For Unpaid Overtime Premiums ..................................................................17

        A.    Santamaria Did Not Exercise Discretion or Independent Judgment With Respect to Matters of Significance ........................................................................18

        B.    The Fact That Other Employers Properly Classified Human Resources Professionals As Exempt Has No Bearing on This Case. ................................................19

        C.    Plaintiff's Wage Statements and Wage Notice Claims Should Survive Summary Judgment .......................................................................................21

**Conclusion** .................................................................................................. 22

**TABLE OF AUTHORITIES**

Page(s)

<u>**Cases**</u>

*Boonmalert v. City of New York*,
   721 F. App'x 29 (2d Cir. 2018) ............................................................... 8

*Cityspec, Inc. v. Smith*,
   617 F. Supp. 2d 161 (E.D.N.Y. 2009) ..................................................... 6

*Clark v. Jewish Childcare Ass'n, Inc.*,
   96 F.Supp.3d 237 (S.D.N.Y. 2015) ........................................................ 12

*Danzer v. Norden Sys., Inc.*,
   151 F.3d 50 (2d Cir. 1998) .................................................................... 13

*Difilippo v. Barclays Capital, Inc.*,
   552 F.Supp.2d 417 (S.D.N.Y.2008) ....................................................... 19

*Gorzynski v. JetBlue Airways Corp.*,
   596 F.3d 93 (2d Cir. 2010) ..................................................................... 12

*Grady v. Affiliated Cent., Inc.*,
   130 F.3d 553 (2d Cir.1997) .................................................................... 14

*Greenway v. Buffalo Hilton Hotel*,
   143 F.3d 47 (2d Cir. 1998) ..................................................................... 17

*Hamilton v. Westchester Cnty.*,
   3 F.4th 86 (2d Cir. 2021) ....................................................................... 10

*Hamilton v. Westchester Cnty.*,
   No. 7:18-CV-8361 (NSR), 2022 WL 4087956 (S.D.N.Y. Sept. 6, 2022) ..... 11

*Haywood v. Heritage Christian Home, Inc.*,
   977 F.Supp. 611 (1997) .......................................................................... 12

*Husser v. New York City Dep't of Educ.*,
   137 F. Supp. 3d 253 (E.D.N.Y. 2015) ..................................................... 12

*Jibowu v. Target Corp.*,
   492 F. Supp. 3d 87 (E.D.N.Y. 2020) ....................................................... 21

*Kirkland v. Cablevision Sys.*,
   760 F.3d 223 (2d Cir. 2014) ................................................................... 13

*Malzberg v. New York Univ.*,
   No. 19-CV-10048 (LJL), 2022 WL 889240 (S.D.N.Y. Mar. 25, 2022) ....... 11

*Mateer v. Peloton Interactive, Inc.*,
   No. 22 CIV. 740 (LGS), 2022 WL 2751871 (S.D.N.Y. July 14, 2022) ........ 21

*Morales v. Compass Group, PLC,*
No. CV-13-9231-JFW(MANx), 2014 WL 5304913 (C.D. Cal. Oct. 16, 2014) ........................ 20

*Patterson v. EmblemHealth Inc.,*
No. 22-CV-2177-LTS, 2023 WL 5671531 (S.D.N.Y. Sept. 1, 2023) .......................................... 11

*Piligian v. Icahn Sch. of Med. at Mount Sinai,*
490 F. Supp. 3d 707 (S.D.N.Y. 2020) ..................................................................................... 12

*Ramos v. Marriott Int'l, Inc.,*
134 F. Supp. 2d 328 (S.D.N.Y. 2001) ................................................................................. 8, 13

*Santos v. Costco Wholesale,*
271 F. Supp. 2d 565 (S.D.N.Y. 2003) ...................................................................................... 6

*Sethi v. Narod,*
974 F.Supp.2d 162 (E.D.N.Y. 2013) ....................................................................................... 21

*Thomson v. Odyssey House,*
2015 WL 5561209 (S.D.N.Y. Sept. 21, 2015) ......................................................................... 10

*Tomassi v. Insignia Financial Group,*
478 F.3d 111 (2d Cir. 2007) ..................................................................................................... 6

*Tongalson v. Dreyfus Serv. Corp.,*
No. 04 CIV. 2308JSR, 2005 WL 356805 (S.D.N.Y. Feb. 14, 2005) ........................................ 14

*Trimmer v. Barnes & Noble, Inc.,*
31 F.Supp.3d 618 (S.D.N.Y 2014) .......................................................................................... 19

*Vega v. Hempstead Union Free Sch. Dist.,*
801 F.3d 72 (2d Cir. 2015) ....................................................................................................... 8

*Wright v. Aargo Sec. Servs., Inc.,*
No. 99 Civ. 9115, 2001 WL 91705 (S.D.N.Y. Feb. 2, 2001) ................................................... 19

## Statutes and Regulations and Rules

28 C.F.R. § 35.108 ...................................................................................................................... 10

29 C.F.R. § 541.200 .................................................................................................................... 17

29 C.F.R. § 541.207 .................................................................................................................... 18

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. as amended by the ADA
Amendments Act of 2008 ("ADAAA") ............................................................. 7 – 8, 10 – 11

New York State Human Rights Law, N.Y. Executive Law § 290 et seq. ............................ 7 – 8, 10

New York City Human Rights Law, Admin. Code §§ 8-101 et seq. ............................ 7 – 8, 10 – 11

Fed. R. Civ. P. 56 ...................................................................................................................... 1, 6

Plaintiff Toni Santamaria ("Plaintiff" or "Santamaria") respectfully submits this Memorandum of Law in opposition to Defendants', Vee Technologies, Inc. ("Vee Technologies" or the "Company") and Patrick O'Malley ("O'Malley," and together with Vee Technologies, "Defendants") Motion for Summary Judgment. For the reasons set forth below, the Court should deny Defendants' motion in its entirety.

## PRELIMINARY STATEMENT

Defendants' Motion for Summary Judgment does not come close to meeting their burden of showing "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record in this case is replete with material factual disputes. The Court should deny Defendants' Motion and afford Plaintiff the opportunity to present her claims to a jury.

Santamaria sought an accommodation for a disability in July 2021. Approximately six weeks later, her supervisor, Sue Smith ("Smith"), seized on an innocent mistake and caused Defendant O'Malley to terminate her employment. Smith's motivation, and its impact on the termination decision, is a question of fact.

Santamaria alleges that Defendants' decision to terminate her employment was motivated by their belief that Santamaria was a malingerer who was seeking an accommodation she did not need. Discovery in this case revealed written evidence that confirms Santamaria's suspicions. After Santamaria requested that Smith allow her to continue working from home because a knee injury made it difficult to commute, Smith wrote to O'Malley:

> Toniann [Santamaria]-- Informed me yesterday that due to an issue with her knee, she is not able to travel to the office. Although she just returned from her vacation to Florida, which included mass transit, NYC is not do-able.

Defendants' Motion completely ignores this unusually clear evidence of bias.  It would be entirely appropriate for a factfinder to conclude, based on this evidence, that Defendants' decision to terminate Santamaria was motivated by Smith's belief that Santamaria sought an inappropriate accommodation.

In addition to this evidence of Smith's bias, Defendants' Motion should be denied because the issue of whether Defendants' reasons for terminating Santamaria's employment are pretextual is a disputed issue of fact.  Defendants claim that Santamaria intentionally caused a "data breach."  It is undisputed that Santamaria never requested the compensation information that Defendants' payroll provider, Paychex, sent to her.  More than a year earlier, Santamaria had discovered that Paychex mistakenly gave her access to the same compensation information, and she informed them that she was not permitted to see this information.  O'Malley testified that he did not know that Santamaria had previously received the purportedly confidential information from Paychex, nor did he know that Santamaria told Paychex not to provide her with the information.  When asked if this revelation would have changed the decision to terminate Santamaria, O'Malley acknowledged that the new facts were "interesting."  But Smith – who clearly felt Santamaria was a malingerer – had pushed O'Malley to quickly terminate Santamaria. It is undisputed that Defendants never asked Santamaria about the "data breach" incident before terminating her employment.

Santamaria mistakenly forwarded the file that included the purportedly confidential information to her personal email account because she thought it was the file she requested, and she routinely forwarded emails to her personal account so she could perform work on her personal computer. Santamaria was never able to open the file that included the purportedly

confidential information. Defendants now claim that compensation information about its managers and executives was highly confidential and strictly off limits – to the person who was supposedly in charge of its Human Resources function. Despite this, Defendants did nothing to recover the purportedly confidential information from Santamaria. Defendants also continue to use Paychex and did not penalize it, despite the fact that it caused the so called "data breach." Other employees have made similar mistakes, that resulted in financial losses to Vee Technologies, but they were not disciplined nor terminated. In light of this evidence, it would be reasonable for a factfinder to conclude that Smith's feelings about Santamaria's request for an accommodation motivated her to find a reason to terminate Santamaria's employment.

The Court should also deny Defendants' motion with respect to Santamaria's claim for unpaid overtime because whether Santamaria regularly exercised "discretion and independent judgment with respect to matters of significance" is a question of fact. While Santamaria held the title "Director, Human Resources" she was, in fact, more like an administrative assistant. Smith micromanaged Santamaria and did not allow her to make decisions.

Defendants' Motion asks the Court to find that certain evidence, including select entries in weekly reports, is dispositive. But there is significant evidence that contradicts Defendants' evidence and supports a finding that Santamaria's duties did not qualify her for exempt status. There is sufficient evidence in the record to support a finding that Defendants did not permit Santamaria to exercise discretion and independent judgment with respect to matters of significance. Accordingly, the Court should deny Defendants' Motion for summary judgment on Santamaria's claims for unpaid overtime.

<u>**SUMMARY OF RELEVANT FACTS**</u>

Defendants hired Santamaria as Director, Human Resources, in March 2018. *See* Plaintiff's Response to Defendants' 56.1 Statement ("Plf. 56.1") ¶ 2. Throughout her employment, Santamaria was supervised by Smith. *See* Plf. 56.1 ¶ 7. Defendants terminated Santamaria's employment on August 26, 2021. Plf. 56.1 ¶ 98.

## I. Defendants Misclassified Santamaria as An Exempt Employee

Santamaria was, essentially, Smith's administrative assistant. *See* Plf. 56.1 ¶¶ 7, 14, 15, 19. Santamaria devoted approximately 80% of her working time to administrative tasks, including scheduling interviews, organizing Company events, organizing information in spreadsheets at the request of Smith and other managers, completing and summarizing research assignments from Smith, and revising drafts of documents for Smith. Plf. 56.1 ¶ 99. Smith always closely managed Santamaria's work. Plf. 56.1 ¶¶ 7, 14, 15, 19

Santamaria's duties with respect to recruiting were limited to "sourcing" and "pre-screening" candidates under the direction of Smith and other decisionmakers. Plf. 56.1 ¶ 19. Santamaria never had authority to make hiring decisions. *Id*. Nor could Santamaria make decisions to terminate employees. Plf. 56.1 ¶ 17. Similarly, Santamaria's work with respect to job postings, employment policies, compensation decisions and employment disciplinary matters was limited to a support role. *See* Plf. 56.1 ¶¶ 7, 16, 23, 24, 100, 101. Smith and O'Malley exercised discretion and independent judgment in these areas; Santamaria did not. *Id*.

## II. Defendants Terminated Santamaria for Requesting An Accommodation

In 2019, Santamaria suffered a torn meniscus and ACL, which resulted in chronic knee problems. Plf. 56.1 ¶¶ 44, 45. A January 2020 MRI confirmed this diagnosis and Santamaria

informed Vee Technologies of her medical condition. *Id.* In early 2020, Santamaria continued to commute to Vee Technologies' New York City office, but she had serious difficulties, including falling on more than one occasion. *Id.* From March 2020 to June 2021, all of Vee Technologies' New York employees were directed to work remotely. Plf. 56.1 ¶ 46. In June 2021, Vee Technologies told employees they would be required to work in the office at least two days per week. Plf. 56.1 ¶ 46. A Physician's Assistant who treated Santamaria told her she should not commute to New York City because of her medical condition. Plf. 56.1 ¶ 53.

In July 2021, Santamaria asked Smith to allow her to continue to work from home full time because of her medical condition. Plf. 56.1 ¶ 51. The next day, Smith wrote to O'Malley:

> "Toniann [Santamaria]-- Informed me yesterday that due to an issue with her knee, she is not able to travel to the office. Although she just returned from her vacation to Florida, which included mass transit, NYC is not do-able." *Id.*

During her deposition, Smith conceded that the meaning of this communication is a question of fact. Plf. 56.1 ¶ 107. Smith claimed she was just trying to anticipate questions from O'Malley and she was not being sarcastic, but she also acknowledged that a person reading her communication could conclude she was suspicious about Santamaria's need for an accommodation. *Id.*

Defendants claim that Plaintiff was terminated because she caused a "data breach" by forwarding compensation information to her personal email. Plf. 56.1 ¶ 95. As discussed below, there is evidence that Smith misconstrued and exaggerated this incident to cause O'Malley to terminate Santamaria. *Id*, Plf. 56.1 ¶¶ 103 – 107. Defendants did not terminate the vendor, Paychex, that caused the incident, nor did they terminate other employees who caused much more serious "data breaches." Plf. 56.1 ¶¶ 95, 106, 107. If Defendants had conducted even a cursory investigation before terminating Santamaria, they would have learned that she made a

simple mistake. Plf. 56.1 ¶¶ 89, 104. They would have also learned that Paychex had made the same supposedly confidential information available to Santamaria more than a year before and Santamaria told them she was not permitted to access this information. Plf. 56.1 ¶ 104.

## ARGUMENT

### I.    Relevant Standard

Summary judgment is only appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court must view all facts in the light most favorable to the non-moving party, resolving all ambiguities and drawing all inferences in their favor. *See Tomassi v. Insignia Financial Group*, 478 F.3d 111, 116 (2d Cir. 2007). *See also Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 168 (E.D.N.Y. 2009) ("[t]he Court should not grant summary judgment if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party"). Summary judgment is generally "inappropriate in the context of a workplace discrimination case because the allegations usually require an exploration into an employer's true motivation and intent for making a particular employment decision." *Santos v. Costco Wholesale*, 271 F. Supp. 2d 565, 571 (S.D.N.Y. 2003).

## II.    Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Disability Discrimination Claims

Plaintiffs' claims for violations of federal, New York State and New York City law are based on Defendants' termination of her employment.[1]  It is undisputed that Plaintiff requested an accommodation, in July 2021, because of a medical condition. Plf. 56.1 ¶ 51. Plaintiff is claiming that after she requested an accommodation, Defendants retaliated against her and terminated her employment.  Whether the decision to terminate Santamaria's employment was motivated by her request for an accommodation, and whether the reasons Defendants offer to explain their termination decision are a pretext, are disputed issues of fact.

Defendants accurately summarize the applicable law:

An inference of discrimination can be derived from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in degrading terms or invidious comments about employee's protected group; the more favorable treatment of employees not in the protected group; or the sequence of events leading to the alleged adverse employment action.

(Def's MOL pgs. 11-12).  But Defendants misstate the record.  As discussed below, there is evidence of animus towards Santamaria for requesting an accommodation, more favorable treatment of employees who are not in the protected group, and exaggeration of the seriousness of the event that purportedly led to the decision to terminate Santamaria.  These disputed issues

---

[1] Plaintiff asserted claims for "Failure to Engage in the Interactive Process" and "Failure to Accommodate" under the ADA, NYSHRL, and NYCHRL. These claims are based on the theory that, by **terminating** Plaintiff, Defendants failed to engage in the interactive process and failed to accommodate Plaintiff.

of fact preclude summary judgment.

### A. There Is Sufficient Evidence in the Record to Establish a *Prima Facie* Case

Plaintiff's Complaint asserts disability discrimination claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. as amended by the ADA Amendments Act of 2008 ("ADAAA"); the New York State Human Rights Law ("NYSHRL"), Exec. Law §§ 296, et seq.; and the New York City Human Rights Law ("NYCHRL"), Admin. Code §§ 8-101 et seq.

Plaintiff's discrimination claims are subject to the *McDonnell Douglas* framework. First, a plaintiff must establish a *prima facie* case of discrimination by showing that: (1) the plaintiff is a member of a protected class, (2) the plaintiff was qualified to hold the position, (3) the plaintiff suffered an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Ramos v. Marriott Int'l, Inc.*, 134 F. Supp. 2d 328, 338 (S.D.N.Y. 2001); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015); *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018). This burden "is so minimal that some courts simply assume the existence of a prima facie case." *See Ramos* at 338.

### i. Santamaria is Within the Protected Class

Santamaria is within the protected class under the relevant statutes because she is a person with a disability, and she sought an accommodation. Plaintiff's torn meniscus and ACL made it painful and difficult for her to walk for extended periods of time or on uneven surfaces; therefore, it substantially impaired her ability to commute into New York City. Plf. 56.1 ¶ 55.

Defendants rely on disputed facts to argue that that Plaintiff did not have a disability. They point out that "Plaintiff proffered no evidence to the Company regarding any disability as

of June 2021, when Plaintiff made her request to continue working from home." (Def's MOL p. 6). However, the entire Company had been working from home from since March 2020, and Plaintiff did not require an accommodation until it was announced, in June 2021, that she would be expected to begin commuting into the New York City office. Plf. 56.1 ¶¶ 46, 49. Defendants point out that "Plaintiff never received treatment for her knee at any time between January 2020 and August 5, 2021." (Def's MOL p. 6). However, Defendants fail to acknowledge that Plaintiff saw four different medical professionals about her knee during this time, and that she delayed seeking treatment because, (1) by working from home, she was able to avoid activities (like commuting) that would necessitate immediate treatment, and (2) the ongoing global pandemic discouraged her from arranging in-person appointments with doctors to address an issue that, while she was permitted to work from home, was not urgent. Plf. 56.1 ¶ 52. Defendants assert that Plaintiff "took no pain medication" but fail to acknowledge that Plaintiff testified she took Tylenol. (Def's MOL p. 6); Plf. 56.1 ¶ 58. Defendants misstate the record when they claim that Plaintiff "admits that no doctor placed restrictions on her physical activities over that period of time" and that "she did not even seek an opinion regarding restrictions from any health care provider at any time." (Def's MOL p. 6). Plaintiff was told by a Physician Assistant that she should avoid walking on her knee and commuting, and Plaintiff did not seek an opinion regarding restrictions because, at first, the entire company was working from home anyway, and when that changed, Plaintiff offered to provide medical documentation, but Smith insisted that she did not need any. Plf. 56.1 ¶ 62. Lastly, Defendants point out that "Plaintiff testified to regularly engaging in a number of physical activities, including walking and exercise," but fail to clarify that Plaintiff testified that she engaged in light exercise aimed at strengthening her knee to avoid

the need for surgery, that she could only walk at a slow pace for about half a mile before she would experience pain in her knee, and that it was difficult and painful for Plaintiff to walk on uneven surfaces. (Def's MOL p. 6); Plf. 56.1 ¶¶ 55, 56.

Under the ADA, a disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." "Major life activities" under the ADAAA expressly include walking. 28 C.F.R. § 35.108(c)(1)(i). The ADAAA instructs that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA," and "is not meant to be a demanding standard." *See Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92–93 (2d Cir. 2021) (quoting 28 C.F.R. § 35.108(d)(1)). According to the ADAAA:

> The threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis…An impairment is a disability within the meaning of this part if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population…An impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting…The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical evidence. 28 C.F.R. § 35.108(d)(1).

The NYSHRL and NYCHRL "have a broader definition of 'disability' than does the ADA; neither statute requires any showing that the disability substantially limits a major life activity." *Thomson v. Odyssey House*, 2015 WL 5561209, at *18 (S.D.N.Y. Sept. 21, 2015) (quoting *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 541 (S.D.N.Y. 2009).

A reasonable jury could conclude that Plaintiff has a disability as defined by the ADA, NYSHRL, and NYCHRL. Individuals with impairments similar to Plaintiff's have been found to

be disabled under the ADA. *See Malzberg v. New York Univ.*, No. 19-CV-10048 (LJL), 2022 WL 889240, at *12 (S.D.N.Y. Mar. 25, 2022) (Defendant denied summary judgment as to whether Plaintiff's back pain, which prevented him from standing for long periods of time, could be a disability under the ADA and NYCHRL); *Hamilton v. Westchester Cnty.*, No. 7:18-CV-8361 (NSR), 2022 WL 4087956, at *4 (S.D.N.Y. Sept. 6, 2022) (Plaintiff with knee and meniscus injuries that restricted his ability to walk without the aid of crutches for a period of weeks sufficiently alleged he had a disability under the ADA); *Patterson v. EmblemHealth Inc.*, No. 22-CV-2177-LTS, 2023 WL 5671531, at *5 (S.D.N.Y. Sept. 1, 2023) (Plaintiff's ongoing respiratory difficulties that limited his ability to walk short distances was a disability under the ADA).

Defendants do not argue that Plaintiff failed to request an accommodation or that the requested accommodation was unreasonable; they only argue that, based on the disputed facts above, Plaintiff did not actually need the accommodation that she requested. (Def's MOL p. 7-9). However, Plaintiff's testimony clearly describes why she needed the accommodation she sought. Her commute into New York City involved walking for an extended period of time and walking up and down stairs. Plf. 56.1 ¶¶ 49, 51. Her knee injury made it painful for her to walk for extended period of time and made it difficult to walk on uneven surfaces. *Id.* On more than one occasion, when she was continuing to commute into the office, she fell due to her injury. Plf. 56.1 ¶¶ 49, 55. In addition to the substantial discomfort that the commute caused her, she was justifiably concerned that commuting into the city would exacerbate her injury and necessitate surgery. Plf. 56.1 ¶¶ 49, 51.

In addition, it is undisputed that Santamaria requested an accommodation in July 2021. Taking an adverse employment action against an individual for requesting an accommodation

violates federal, state and New York City law. *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F.Supp.3d 237, 262 (S.D.N.Y. 2015); *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 715 (S.D.N.Y. 2020) (citing N.Y.C. Local Law No. 129 (2019) (amending § 8-107(7)).

### ii. Santamaria Was Qualified and Her Employment Was Terminated

There should be no dispute that Santamaria was qualified for her position and her employment was terminated. *See Haywood v. Heritage Christian Home, Inc.*, 977 F.Supp. 611, 614 (1997) (only a minimal showing of qualification is required to establish the second element of a prima facie claim of discrimination). Plaintiff had a background in Human Resources, was given a raise, and generally received positive feedback while employed with Defendants. Plf. 56.1 ¶¶ 4, 28, 29.

### iii. Defendants Terminated Santamaria Under Circumstances That Give Rise to An Inference of Discrimination

It is undisputed that in June 2021, Santamaria sought an accommodation, in the form of continued remote work, because her knee injury made commuting into the office difficult. Plf. 56.1 ¶¶ 49, 51. Defendants terminated Santamaria approximately two months after she requested this accommodation. Plf. 56.1 ¶ 98. The temporal proximity alone, between Santamaria's protected activity and her termination, is sufficient to establish a prima facie case of discrimination. See *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010); *Husser v. New York City Dep't of Educ.*, 137 F. Supp. 3d 253, 274 (E.D.N.Y. 2015).

In their arguments that Plaintiff has failed to establish the termination did not occur under circumstances giving rise to an inference of discrimination, Defendants argue that (1) Smith had given Plaintiff harsh or unfair performance evaluations prior to her request for an

accommodation, and (2) that Smith did not make any disparaging remarks or display any animus regarding Plaintiff's disability. (Def's MOL p. 11 – 14). Defendants also argue that Plaintiff's termination was justified; however, such an argument relates to the second stage of the *McDonnell Douglas* framework, and does not address whether Plaintiff has established her prima facie case. *Id*.

Smith sarcastically communicated her doubts about the veracity of Santamaria's accommodation request to O'Malley. In addition, Santamaria testified that immediately after her request for accommodation, Smith treated her significantly worse, to the point Santamaria said to Smith "I think you're trying to make me quit…and I feel like you're retaliating against me." Plf. 56.1 ¶ 103. This evidence is more than sufficient to meet Plaintiff's *prima facie* burden.

**B.**    **Multiple Disputed Issues of Fact Preclude Summary Judgment on the Issue of Whether Defendants' Explanations For Terminating Santamaria Are Pretextual.**

If a plaintiff establishes a *prima facie* case, "the burden shifts to the employer to give a legitimate, non-discriminatory reason for its actions." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). A plaintiff can avoid summary judgment by producing evidence from which a reasonable jury could: (1) disbelieve defendant's proffered reasons for the adverse employment action; and (2) infer that the employer's real motivation was unlawful discrimination. *See Ramos*, at 343 (S.D.N.Y. 2001) (*citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). "But this does not mean that the evidence that the plaintiff used to establish his prima facie case is wiped out; there is no reason that the plaintiff cannot rely on evidence offered to establish his prima facie case ... subsequently to rebut the employer's ... explanation." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 55 (2d Cir. 1998). At this point, a court "must analyze the evidence, along with the inferences that may be reasonably drawn from it, and

decide if it raises a jury question as to whether the plaintiff was the victim of discrimination."

*Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir.1997).

### i. Smith Was Biased Against Santamaria Because She Requested an Accommodation

Remarkably, Defendants' Brief argues:

Plaintiff does not claim that Ms. Smith made any disparaging remark about Plaintiff's alleged disability, nor is there any evidence that Ms. Smith bore any animus against Plaintiff due to her alleged disability.

(Def's MOL p. 13). Defendants double down, claiming:

[t]here is no evidence that Ms. Smith or Mr. O'Malley made any negative comment about Plaintiff's knee injury.

(Def's MOL pg. 17). Defendants are simply ignoring the evidence in the record.

Smith's July 2021 communication to O'Malley reveals that she was biased against Santamaria for requesting an accommodation. Plf. 56.1 ¶ 107. Skepticism about an employee's need for an accommodation is evidence of pretext. See *Tongalson v. Dreyfus Serv. Corp.*, No. 04 CIV. 2308JSR, 2005 WL 356805, at *7 (S.D.N.Y. Feb. 14, 2005) ("because [employer] made comments suggesting [disabled employee] was malingering, a reasonable juror also could conclude that her disability…played a part in the decision to terminate her"). As Smith acknowledged, it would be reasonable to read her memo to convey suspicion about Santamaria's request for an accommodation. Plf. 56.1 ¶ 107. Smith's memo is direct evidence of bias against Santamaria for requesting an accommodation.

### ii. Smith Was Involved in the Decision to Terminate Santamaria

While they ignore Smith's July 2021 communication, Defendants obviously understand it is evidence of unlawful bias, so they claim that O'Malley was solely responsible for the

termination decision. Def.' 56.1 ¶ 94. But Defendants' attempt to distance themselves from Smith is belied by the record. Plf. 56.1 ¶ 94. Defendants' Interrogatory responses identified Smith as an individual "responsible for, consulted in, or who were otherwise a part of or participated in, Defendant's decision to terminate Plaintiff's employment." *Id.* The letter from Vee Technologies that confirmed Santamaria's termination was sent under Smith's signature. *Id.* O'Malley testified that he terminated Santamaria's employment based on Smith's report to him that Santamaria had engaged in serious and intentional misconduct. *Id.*

The depositions in this case revealed that O'Malley does not even understand what Smith believes Santamaria did wrong. Plf. 56.1 ¶ 108. Smith testified that Santamaria was permitted to have access to the names, addresses, department, and similar demographic information for the employees in entity AW000800. *Id.* According to Smith, Santamaria was only restricted from accessing compensation information for these employees. *Id.* Smith purportedly recommended termination because of Santamaria's handling of compensation information. *Id.* But O'Malley believed that Santamaria was not permitted to request even basic demographic information (such as addresses) for the employees in entity AW000800. *Id.* This directly contradicts Smith's testimony. *Id.* Smith could not explain O'Malley's misunderstanding of these crucial facts. *Id.* Smith acknowledged that her reasoning for terminating Santamaria, and O'Malley's reasoning, are different. *Id.* Yet, Defendants are asking the Court to conclude that O'Malley was the sole decisionmaker. (Def.' 56.1 ¶ 94).

Plaintiffs also argue that "O'Malley had reason to doubt the veracity of Plaintiff's excuse." (Def's MOL p. 15). But it is undisputed that Defendants terminated Santamaria without asking her about the alleged "data breach" incident. Plf. 56.1 ¶ 107. Smith caused

O'Malley to believe that Santamaria had engaged in intentional misconduct that justified her immediate termination. Plf. 56.1 ¶ 94. At a minimum, Smith's role in the termination decision is a material issue of fact that is in dispute.

### iii. Defendants Exaggerated The Seriousness of Santamaria's Alleged Misconduct to Justify The Termination of Her Employment

While Smith caused O'Malley to believe that Santamaria had engaged in serious, intentional misconduct, Defendants' other actions contradict this conclusion. First, it is undisputed that Paychex sent purportedly confidential compensation information to an unauthorized employee who did not request the information. Plf. 56.1 ¶ 76. Yet, Defendants took no action against Paychex. Plf. 56.1 ¶ 107. O'Malley initially testified that Vee Technologies fired Paychex, but later admitted it did not. *Id.* Vee Technologies continues to pay Paychex to provide payroll services and store and manage its supposedly highly confidential information. *Id.* Further, if Defendants had asked Santamaria, they would have learned that Paychex gave Santamaria access to the same compensation information in May 2020, and Santamaria told them she was not permitted to see this information. Plf. 56.1 ¶ 104.

Second, the termination letter that Smith drafted with Vee Technologies' counsel accused Santamaria of violating the Company's confidentiality agreement. Plf. 56.1 ¶ 94. O'Malley testified that he did not agree with the inclusion of that accusation in the termination letter. *Id.* Smith accused Santamaria of taking highly confidential information, yet Defendants did nothing to recover that information from Santamaria. Plf. 56.1 ¶ 107.

It is undisputed that other Vee Technologies employees have made mistakes that caused "data breaches." Plf. 56.1 ¶ 107. For example, an office manager visited a website that resulted in

Company accounts being infected with a virus and risking exposure of confidential client data. *Id.* The FBI needed to get involved with the situation, and ultimately the incident led to an increase in the Company's insurance premiums; however, the employee responsible was not disciplined. *Id.* Inconsistent application of purported workplace rules is strong evidence of pretext. *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2d Cir. 1998).

## III. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Claims For Unpaid Overtime Premiums

Santamaria claims that Defendants improperly classified her as an exempt employee and failed to pay her overtime premiums. Defendants assert that Santamaria was exempt under the administrative exemption. 29 C.F.R. § 541.200(a)(2)-(3). The parties agree that the exemption analysis is substantially similar under the FLSA and NYLL. The sole issue in dispute is whether Santamaria's job required her to regularly exercise "discretion and independent judgment with respect to matters of significance."

Santamaria's deposition and declaration testimony establish that her primary duties were to perform administrative tasks at the direction of her supervisors. Plf. 56.1 ¶¶ 7, 14, 23, 99 – 102. She spent the vast majority of her time on tasks like scheduling interviews, organizing information in spreadsheets and summarizing research. *Id.* Santamaria did not have authority to exercise "discretion and independent judgment with respect to matters of significance." *Id.* Defendants are asking the Court to disregard this evidence and conclude that other evidence is dispositive. Of course, the Court's role at the summary judgment stage is not to weigh the evidence. Because Santamaria has come forward with sufficient evidence to create a genuine issue of material fact, Defendants' motion should be denied.

## A.    Santamaria Did Not Exercise Discretion or Independent Judgment With Respect to Matters of Significance

There is significant evidence that Santamaria was expected to perform administrative tasks and follow Smith's directions.  She did not have authority to make decisions.  DOL Regulations explain:

> Perhaps the most frequent cause of misapplication of the term "discretion and independent judgment" is the failure to distinguish it from the use of skill in various respects. An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices, is not exercising discretion and independent judgment within the meaning of §541.2. This is true even if there is some leeway in reaching a conclusion, as when an acceptable standard includes a range or a tolerance above or below a specific standard.

29 C.F.R. § 541.207(c)(1).  When an employee facilitates decision-making by their boss, that employee is nonexempt, while employees who regularly make important decisions are typically exempt.

Santamaria's duties with respect to hiring are a good illustration of her role with Vee Technologies.  Santamaria screened resumes as directed by Smith and others. Plf. 56.1 ¶ 19. When her superiors made selections, Santamaria would schedule interviews. *Id*. At times, Santamaria conducted first level interviews, to weed out unqualified candidates. *Id*. But Santamaria never had authority to decide which candidates would be offered employment or the amounts they would be offered. *Id*.; Plf. 56.1 ¶ 14. The DOL's regulations are directly on point:

> Another type of situation where skill in the application of techniques and procedures is sometimes confused with discretion and independent judgment is the "screening" of applicants by a personnel clerk. Typically such an employee will interview applicants and obtain from them data regarding their qualifications and fitness for employment. These data may be entered on a form specially

prepared for the purpose. The "screening" operation consists of rejecting all applicants who do not meet standards for the particular job or for employment by the company. The standards are usually set by the employee's superior or other company officials, and the decision to hire from the group of applicants who do meet the standards is similarly made by other company officials. It seems clear that such a personnel clerk does not exercise discretion and independent judgment as required by the regulations in subpart A of this part. On the other hand an exempt personnel manager will often perform similar functions; that is, he will interview applicants to obtain the necessary data and eliminate applicants who are not qualified. The personnel manager will then hire one of the qualified applicants. Thus, when the interviewing and screening are performed by the personnel manager who does the hiring they constitute exempt work, even though routine, because this work is directly and closely related to the employee's exempt functions.

Santamaria's duties with respect to hiring are the duties of a nonexempt "personnel clerk" and not the duties of an exempt personnel manager.

### B.  The Fact That Other Employers Properly Classified Human Resources Professionals As Exempt Has No Bearing on This Case.

Whether an individual is permitted to exercise discretion and independent judgment with respect to matters of significance is an inherently fact-specific question that is rarely appropriate for resolution on a motion for summary judgment. *See, e.g., Trimmer v. Barnes & Noble, Inc.,* 31 F.Supp.3d 618, 624 (S.D.N.Y 2014) (denying summary judgment because genuine issues of material fact existed as to whether the plaintiffs exercised sufficient discretion to fall under the administrative exemption); *Difilippo v. Barclays Capital, Inc.,* 552 F.Supp.2d 417, 424–25 (S.D.N.Y.2008) (same); *Wright v. Aargo Sec. Servs., Inc.*, No. 99 Civ. 9115, 2001 WL 91705, at *14–15 (S.D.N.Y. Feb. 2, 2001) (same).

Defendants cite to a number of decisions in which courts granted summary judgment in favor of employers who classified Human Resources professionals as exempt. Those decisions, from other jurisdictions, are factually distinct from this case. Indeed, those decisions highlight

why summary judgment would be inappropriate in this case.

In *Morales v. Compass Group, PLC*, No. CV-13-9231-JFW(MANx), 2014 WL 5304913, at *7 (C.D. Cal. Oct. 16, 2014), for example, the undisputed evidence established that the plaintiff exercised discretion and independent judgment with respect to matters of significance. The court noted that "Plaintiff testified that she devoted the majority of her time in her position as HR Consultant to three tasks—training, focus groups, and wage and hour audits—and that each of these tasks required her to regularly exercise discretion and independent judgment." In addition, the Plaintiff in *Morales* testified that her manager gave her only "broad assignments" and Plaintiff "had complete discretion to decide on a day-to-day and hour-to-hour basis what tasks to perform in order to accomplish those broad assignments."

In this case, by contrast, Santamaria testified that Smith constantly micromanaged her. Plf. 56.1 ¶¶ 7, 15, 23. Santamaria performed tasks involving research and drafting, and these tasks were always assigned by Smith, reviewed by Smith, and were in service to Smith making decisions and finalizing company policies. Plf. 56.1 ¶¶ 7, 23, 24. For example, Smith directed Santamaria to research various human resources companies that the company might use, so Santamaria summarized her research to Smith who made the decision about which company to use. *Id*. Santamaria assisted Smith with drafting revisions of job postings, but only Smith had authority to approve the postings. Plf. 56.1 ¶¶ 7, 14, 16. Santamaria and several other employees were directed by Smith to research applicant tracking systems, but Smith oversaw the project, delegated tasks, and had sole authority to decide which system to choose. Plf. 56.1 ¶¶ 7, 14, 23. Smith directed Santamaria and other employees to research COVID-19 restrictions, and Smith and O'Malley, but not Santamaria, had the authority to make decisions about the Company's

COVID-19 policies. Plf. 56.1 ¶¶ 7, 23.

Santamaria is more like the plaintiff in *Sethi v. Narod*, 974 F.Supp.2d 162, 182 (E.D.N.Y. 2013). In *Sethi*, although the plaintiff had a job title that would typically denote exempt status, the Plaintiff's supervisor "closely controlled his work assignments and parceled out his assignments." *Id.* Just like Santamaria, the Plaintiff in *Sethi* did not have "discretion as to his assignments or when and how to complete them." *Id.* The court in *Sethi* denied the employer's motion for summary judgment. *Id.*

**C. Plaintiff's Wage Statements and Wage Notice Claims Should Survive Summary Judgment**

Since there are genuine issues of material fact precluding summary judgment as to whether plaintiff was misclassified as exempt from overtime, Plaintiff's claims arising under the NYLL for failure to provide accurate wage statements and wage notices must also survive summary judgment. *See Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 114 (E.D.N.Y. 2020) ("Because Defendants' alleged noncompliance with § 195(4) turns on whether Plaintiff is exempt, the Court denies Defendant's motion for summary judgment on this claim").

Further, Plaintiff has sufficiently demonstrated a concrete harm arising from Defendants' violation of the NYLL's Wage Statement and Wage Notice requirements (known as the Wage Theft Prevention Act, or "WTPA"), to confer Article III Standing. The WTPA's notice and statement requirements are intended to give employees the information that they need to identify and correct any wage theft. Where, as is the case here, Plaintiff has demonstrated that she was misclassified and, as a result, underpaid for overtime hours she worked, there are "downstream consequences" from the informational injury, and Plaintiff has standing. *See Mateer v. Peloton*

*Interactive, Inc.*, No. 22 CIV. 740 (LGS), 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022) (finding standing where the amended complaint alleged that notice and statement violations contributed to the underpayments alleged).

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment in its entirety and issue such other further relief as this Court deems just and proper.

Dated:      New York, New York
                December 22, 2023

/s/
Brendan Sweeney, Esq.
The Law Office of Christopher Q. Davis, PLLC
80 Broad Street, Suite 703
New York, New York 10004
Attorneys for Plaintiff