UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TONI SANTAMARIA,<br><br>                              Plaintiff,<br><br>          -against-<br><br>VEE TECHNOLOGIES, INC., and PATRICK O'MALLEY,<br><br>                              Defendants. | 22-cv-4472 (AS)<br><br><u>OPINION AND ORDER</u> |

ARUN SUBRAMANIAN, United States District Judge:

Plaintiff Toni Santamaria sued her former employer, Vee Technologies Inc., and its president, Patrick O'Malley, on claims related to discrimination and unpaid wages. Defendants move for summary judgment. For the following reasons, Defendants' motion is granted in part and denied in part.

## BACKGROUND

Santamaria worked at Vee Technologies as the human resources (HR) director from April 2018 to August 2021. Dkt. 51 ¶ 1. The parties provide different accounts of Santamaria's role as the HR director.

According to Defendants, O'Malley wanted to hire a HR director to help build the growing company's HR department and to allow Sue Smith (the company's chief financial officer) to focus on her financial responsibilities rather than HR tasks. ¶¶ 7–10. Defendants claim that, among other things, Santamaria led the company's recruiting efforts for the Center for Excellence, made hiring and firing decisions, selected external recruiting companies, conducted initial interviews of candidates, selected which candidates would be offered a job or project, recommended and developed company policies and programs, advised management on employment issues, and provided advice to the company about compensation practices. ¶¶ 15–27.

According to Santamaria, she acted as Smith's assistant: she would revise job postings under Smith's supervision, complete research tasks at Smith's direction and under her sole authority, inform employees that they had been terminated once Smith made the decision to terminate them, and perform initial screenings of candidates without making any hiring decisions. ¶¶ 7, 14. Santamaria says that she was entirely controlled (and micromanaged) by Smith. ¶ 15.

In January 2020, Santamaria told Defendants that she was experiencing knee pain and went to get an MRI. ¶ 45. Santamaria said that her doctor told her she had a torn meniscus or torn ACL and needed to see an orthopedist. ¶ 52. She continued commuting into work four days a week and working from home one day per week (as was her practice since being hired). ¶ 45. In March 2020, the entire office began working remotely because of the COVID-19 pandemic. ¶ 46. In June 2021,

Vee Technologies announced that employees were expected to return to the office twice a week. ¶ 47. On July 8, 2021, Santamaria asked Smith if she could continue working remotely due to her knee problems. ¶ 49. After Santamaria made this request, Smith emailed O'Malley saying: "Toniann – Informed me yesterday that due to an issue with her knee, she is not able to travel to the office. Although she just returned from her vacation to Florida, which included mass transit, NYC is not do-able." Dkt. 53-2 at 3.

On August 25, 2021, Santamaria emailed Paychex (Vee Technologies' HR vendor) asking for certain employee information she needed for a project. Dkt. 51 ¶¶ 69, 70. Paychex replied to the email, with Smith copied, providing the requested report. However, the report erroneously included additional information about employee compensation that Santamaria did not request and did not have administrative rights to view. ¶¶ 74–76. About 30 minutes later, at 4:27 PM, Smith saw the email and called Santamaria. ¶¶ 75, 80. The two spoke for about 16 minutes, during which time Smith told Santamaria to delete the email. ¶¶ 80–81, 83. Santamaria told Smith that she had deleted the email. ¶ 83. Smith said she would send a corrected report without the restricted information. ¶ 82. Smith sent Santamaria the modified report at 4:42 PM, while Santamaria and Smith were still on the call. ¶ 86. Santamaria confirmed receipt of the files and the call ended. *Id.*

After the call, Smith checked the company's system to see if Santamaria really deleted the email. ¶ 87. That's when she learned that Santamaria had forwarded the original report with restricted information to her personal email account at 4:35 PM, while Smith and Santamaria were still on the phone. ¶ 89. Smith reported this to O'Malley and the two had a meeting the next day, August 26, 2021. ¶¶ 92–93. Santamaria was terminated that day.

Defendants say that O'Malley decided to terminate Santamaria for how she handled the data breach. ¶ 95. Defendants claim that O'Malley thought Vee Technologies "bore responsibility for ensuring the confidentiality of certain information and it would be too risky to continue [Santamaria's] employment as Human Resources Director because he deemed his trust in Plaintiff broken." ¶ 96.

According to Santamaria, Defendants were not really concerned about the breach. She says that she "regularly forwarded work-related emails and documents to her personal email so that she could complete work on her personal laptop, and she was transparent with Smith and the Company about this practice." ¶ 89. She claims that she forwarded the email to herself thinking it was the corrected spreadsheet that Smith had promised, and that she deleted it when she noticed her mistake. *Id.*

Santamaria says she was really fired for requesting an accommodation two months earlier. Santamaria says that after she requested the accommodation, Smith suggested that she could commute by wearing a boot on her injured leg. ¶ 103. According to Santamaria, Smith also began treating her badly after the request, including by "harshly criticizing" her for "minor things (or things that were not really issues at all) in an overly hostile and aggressive tone" and in front of other people. *Id.* Santamaria also claims that Smith began giving her short deadlines, even when Santamaria had an upcoming vacation. *Id.* Santamaria says that this behavior led to a confrontation

during an August 2021 call where Santamaria told Smith "I think you're trying to make me quit … and I feel like you're retaliating against me." *Id.*

Santamaria's amended complaint brings claims for (1) unpaid overtime under the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL); (2) failure to provide certain wage statements and notices under the Wage Theft Protection Act (WTPA); and (3) failure to accommodate, discriminatory termination, and failure to engage in an interactive process under the Americans with Disabilities Act (ADA), the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL).

## LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that would affect the outcome of the suit under the governing law, and a dispute about a genuine issue of material fact occurs if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party." *Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 79 F.4th 206, 220 (2d Cir. 2023) (cleaned up). On a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 61 (2d Cir. 2023).

## DISCUSSION

### I.   Failure to accommodate

"To state a claim for an employer's failure to accommodate a disability, a plaintiff must adequately allege that: '(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Graham v. Macy's Inc.*, 2015 WL 1413643, at *3 (S.D.N.Y. Mar. 23, 2015) (quoting *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013)). The same standard applies under the NYSHRL and the NYCHRL. *See Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015); *Arazi v. Cohen Bros. Realty Corp.*, 2022 WL 912940, at *6 (S.D.N.Y. Mar. 28, 2022).

Under the ADA, a disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual," including walking. 42 U.S.C. § 12102(1); *see also* 29 C.F.R. § 1630.2(i)(1)(i). The term "substantially limits" is "not meant to be a demanding standard" and "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 28 C.F.R. § 35.108(d)(1)(i). "[T]he NYSHRL provides broader protection than the ADA, and the NYCHRL is broader still." *Pagan v. Morrisania Neighborhood Fam. Health Ctr.*, 2014 WL 464787, at *6 (S.D.N.Y. Jan. 22, 2014).

Defendants first argue that Santamaria did not have a disability within the meaning of the statutes. But Defendants' briefing misrepresents Santamaria's testimony. Santamaria testified that she received an MRI in January 2020. Dkt. 45-3 at 268:14–270:18. Santamaria saw two different

doctors in approximately June and August 2020, and received gel injections for her knee sometime after. *Id.* 276:13–277:21. Santamaria also took Tylenol but refrained from taking additional pain medication because she "do[es]n't believe in taking prescribed medication if you don't have to." *Id.* 286:14–24. Santamaria also testified that there were limits on how far she could walk and that she would be in pain after walking more than half a mile. Dkt. 45-3 at 279:12–280:3. Neither the ADA nor its implementing regulations "require medical evidence to establish a genuine dispute of material fact regarding the impairment of a major life activity at the summary judgment stage." *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 43 (2d Cir. 2015). And Defendants have not identified anything in the record rebutting Santamaria's account of her injury. A reasonable juror could conclude, based on Santamaria's testimony, that she suffered from a physical impairment (her knee injury) that "substantially limited" her ability to walk, and for that reason that she is a protected individual under the three statutes.

Defendants next argue that there is no connection between Santamaria's knee injury and her requested accommodation of working from home. But as Defendants admit, Santamaria told Smith that her injury made it difficult to walk. *See* Dkt. 51 ¶ 49. And Santamaria testified that this made it difficult for her to commute to the office. *See* Dkt. 45-3 at 283:16–288:4; 297:5–21. Defendants dispute the extent of Santamaria's mobility issues. But based on the record, the Court cannot conclude that there is no connection between Santamaria's knee injury and her request to work from home.

Finally, Defendants claim that Santamaria was provided the accommodation she sought. They say that at the time of her termination in August 2021, Defendants continued to permit her to work from home. There is no dispute that at the time of her termination, Santamaria was working from home. However, there is a dispute about whether this was in fact Defendants' accommodating Santamaria, or rather whether Vee Technologies was still in the process of implementing their return-to-work program after the pandemic for all its employees. According to Smith, Vee Technologies "informally started slowly opening [the office] with mid-July as kind of the target of, like, let's have the office open again." Dkt. 45-4 at 120:2–5. But Defendants have not provided any evidence that this "target" was met, and nevertheless, Defendants agreed that Santamaria could continue to work from home as an accommodation for her injury. Santamaria says that Defendants did not grant her request for an accommodation, and instead, that Smith told her to check in after an August 2021 doctor's appointment. Dkt. 45-3 at 290:17–291:2. When she provided an update about her doctor's appointment, Smith allegedly said that Smith would need to speak with O'Malley about Santamaria's request to work from home. *Id.* at 299:18–300:6. Santamaria was then terminated before any accommodation request was approved or denied. On this record, it is unclear whether Santamaria was in fact provided a temporary accommodation to work remotely.

Defendants do not raise any other arguments for why summary judgment is warranted with respect to Santamaria's failure to accommodate claims. Defendants' request for summary judgment is therefore denied.[1]

## II.    Discriminatory treatment

Santamaria's ADA, NYSHRL, and NYCHRL discrimination claims are analyzed under the familiar *McDonnell-Douglas* burden shifting framework. *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 72–73 (S.D.N.Y. 2016). "A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (citation omitted). "The NYCHRL creates a lower threshold for actionable conduct and must be construed liberally in favor of discrimination plaintiffs, meaning that a defendant may be liable under the NYCHRL but not under state or federal statutes." *Cain v. Esthetique*, 182 F. Supp. 3d 54, 71 (S.D.N.Y. 2016).

Aside from their arguments on Santamaria's failure-to-accommodate claims, Defendants do not challenge whether Santamaria has evidence as to her prima facie case for discrimination. They instead argue that, even if Santamaria established a prima facie case, her discrimination claims still fail. Defendants say they had a legitimate, non-discriminatory reason for firing Santamaria: "she purposefully sent herself … restricted information after being specifically instructed to delete it and agreeing to do so." Dkt. 44 at 13. And they say Santamaria cannot meet her burden of showing that this reason was a pretext for discriminatory termination.

While the evidence of pretext is far from overwhelming, there are several disputes that make summary judgment inappropriate. The parties agree that even if O'Malley made the ultimate decision to terminate Santamaria, Smith was involved in the meeting that led to Santamaria's termination. *See* Dkt. 51 ¶¶ 93–94. And there are disputes as to whether Smith wanted Santamaria terminated because of her accommodation request. For one thing, Smith emailed O'Malley in July 2021 saying: "Toniann – Informed me yesterday that due to an issue with her knee, she is not able to travel to the office. Although she just returned from her vacation to Florida, which included mass transit, NYC is not do-able." Dkt. 53-2 at 3. While Smith claimed that she was just "stating the facts," she also admitted that she could "certainly understand" why someone might think she was expressing suspicion over Santamaria's request for an accommodation. Dkt. 45-4 at 137:21–138:15. Santamaria also claims that her relationship with Smith became "really bad" after she requested the accommodation and she eventually asked Smith on a call whether Smith was "trying

---

[1] There is confusion in this Circuit as to whether the *McDonnell-Douglas* framework applies to failure-to-accommodate claims and, if so, whether that analysis has been modified for NYCHRL claims. *Goldman v. Sol Goldman Invs. LLC*, 2022 WL 6564021, at *5 (S.D.N.Y. Aug. 5, 2022) (describing different approaches), *report and recommendation adopted*, 2022 WL 4482296 (S.D.N.Y. Sept. 27, 2022). The Court does not reach this issue because Defendants do not raise any pretext arguments with respect to the failure to accommodate claims specifically. In any event, the Court would deny summary judgment under the burden-shifting framework for the reasons explained in section II.

to make [her] quit." Dkt. 45-3 at 301:16–302:22. Defendants disagree and say that Smith was critical of Santamaria long before her requested accommodation, as evidenced by performance reviews. Dkt. 44 at 12–13; *see also* Dkts. 45-28 to -30.

There are also disputes about whether Defendants really thought Santamaria's behavior was grounds for termination. Santamaria argues that Defendants did not care about the confidential information at all. She points out that Smith testified that there was no "quantifiable penalty or impact" on Paychex for its role in the incident. Dkt. 45-4 at 200:12–16. And Smith testified that Defendants did nothing to recover the confidential information once they terminated Santamaria, other than telling her to delete it. *Id.* at 205:4–8. Santamaria further claims that she was accidentally given access to the same information in May 2020 and no action was taken. Dkt. 52 ¶ 23.

Finally, O'Malley demonstrated some confusion in his deposition as to what exactly Santamaria did wrong. At one point in his deposition, O'Malley indicated that he thought, wrongly, that Santamaria was not allowed to see *any* of the information in the original spreadsheet. Dkt. 45-6 at 216:17–217:12. This testimony supports both that Smith (who participated in a meeting with O'Malley to discuss Santamaria's conduct) may have influenced O'Malley's ultimate decision to terminate Santamaria, and that the alleged severity of Santamaria's conduct was contrived. And as explained above, there are disputes as to whether Smith harbored discriminatory animus.

Given these disputes, the Court denies summary judgment as to Santamaria's discriminatory-treatment claims.

### III.    Failure to engage in an interactive process

Summary judgment is warranted with respect to Santamaria's interactive-process claims under the ADA and NYSHRL because "there is no independent cause of action under the ADA or the NYSHRL for a failure to properly engage in the interactive process." *Greenbaum v. New York City Transit Auth.*, 2022 WL 3347893, at *5 (2d Cir. Aug. 15, 2022). However, "in contrast to federal and New York State law … a failure to engage in the interactive process is independently actionable as a separate claim under the NYCHRL." *Id.*

Here, the parties agree that Santamaria made Smith aware of her injury in July 2021 and told Smith that she would provide further information after an August 2021 doctor's appointment. Dkt. 51 ¶¶ 48–50. Santamaria was then terminated in August 2021, before her accommodation request was approved. ¶¶ 93–94. And as already explained, there are questions of material fact regarding whether Santamaria's termination was motivated by her alleged disability. So on this record, the Court finds that there also questions of material fact as to whether Defendants engaged in an interactive process under the NYCHRL.

**IV.    Overtime claims**

Santamaria claims that Defendants improperly classified her as an exempt employee and failed to pay her overtime premiums. Dkt. 50 at 17. Defendants say that Santamaria falls within the administrative exemption to federal and state overtime requirements.

"Congress enacted the Fair Labor Standards Act ... in order to correct 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 227 (2d Cir. 2018) (quoting 29 U.S.C. § 202(a)). The FLSA contains exemptions to these protections, which are "as much a part of the FLSA's purpose as the overtime-pay requirement" and must be given "a fair reading." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018).

As relevant here, the FLSA provides an exemption for employees who work in "bona fide executive, administrative, or professional capacit[ies]." 29 U.S.C. § 213(a)(1). An individual falls within the administrative-employee exemption if: (1) she is "[c]ompensated on a salary or fee basis at a rate of not less than $684 per week"; (2) her "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (3) her "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a); *see also* 29 U.S.C. § 213(a)(1). The same standard applies under the NYLL. *See Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 160 (S.D.N.Y. 2014) ("FLSA's exemptions are incorporated into the NYLL.").

Santamaria meets the first two requirements: her salary was above the minimum requirement and her human-resources employment is considered a management or business role within the meaning of the statutes. *See* Dkt. 44 at 20; *see also* 29 C.F.R. § 541.201(b). Santamaria does not argue otherwise. *See* Dkt. 50 at 17. Instead, Santamaria argues that her "primary duty" did not include "the exercise of discretion and independent judgment with respect to matters of significance" as required under the FLSA and NYLL. 29 C.F.R. § 541.200; 12 N.Y.C.R.R. § 142-2.14(c)(4)(ii) (defining NYLL administrative exemption). Santamaria says that "her primary duties were to perform administrative tasks at the direction of her supervisors." Dkt. 50 at 17.

There is some evidence demonstrating that Santamaria's position required her to exercise discretion, as defined under the statutes. For example, Santamaria described her position on LinkedIn as follows: "Started the first Human Resources Department including planning and execution of recruiting, employee relations and engagement, compliance, training and development, benefits and compliance for healthcare and technology." Dkt. 45-2.

Her resume similarly states that she "[s]tarted the U.S. Human Resources Department encompassing all management, planning and execution of recruiting, employee relations, training and development, benefits and compliance nationally and globally." Dkt. 45-7. Santamaria's resume also states that, as part of her job, she:

7

- o Developed and implemented annual Human Resources strategic planning to address goals and business operational needs.
- o Developed the first CSR program, Tuition Reimbursement, Mentorship and Newsletter that led to a 90% retention and engagement result.
- o Implemented yearly audit of compliance, security, and technology review to foster a seamless and secure technology environment with 95% of the remote workforce.
- o Researched, reviewed, recommended and implemented all personnel policies, procedures, and practices for senior leadership, directors, and managers remote and on-site.

*Id.* These tasks fall squarely within the administrative exemption of the FLSA and NYLL.

In addition, emails sent during her employment show that she participated in discretionary functions, including in her role hiring new employees. For example, in an August 2019 email, Santamaria told supervisors that she was "passing" on a candidate because she felt there were "[t]oo many red flags" based on the candidate's lack of responsiveness during the interview process. Dkt. 45-12. In a November 2020 email to O'Malley, Santamaria said she interviewed a candidate and "liked her professionalism and engagement very much." Dkt. 45-15. She also said that in hiring for the position she was "looking at the person more," meaning looking at the candidate's personal attributes and not just whether their resume matched the job description. *Id.*

While the question is a close one, summary judgment is not appropriate here. The "primary duty" question is fact-intensive, and in opposing summary judgment, Santamaria submits an affidavit in which she claims that "80% of [her] working time was devoted to administrative tasks." Dkt. 52 ¶ 5. Similarly, throughout her deposition testimony, Santamaria consistently stated that she had no discretion in her job because Smith "micromanaged" all her assignments. For example, Santamaria testified that "everything I did Sue would look at it and pretty much micromanage everything and that included the handbook." Dkt. 45-3 at 184:20–23. Santamaria also testified that her resume described work she did "under the direction of Sue Smith," but she did not want to put on her resume that she was "micromanaged by the CFO of the company who used to do HR and she needed to have control of everything." *Id.* at 245:16–21; *see also id.* 249:8–12 ("Everything that I did do was under the direction of Sue Smith. And I was micromanaged. So I am not going to put that in my LinkedIn profile or in my resume.").

The record also supports Santamaria's claim that she handled a lot of administrative tasks. For example, in an email on May 14, 2021, a senior director emailed Santamaria to thank her for her work on the company's efforts to hire an IT client services director. Dkt. 53-1. The senior director described Santamaria's responsibilities as "screen[ing] all the resumes," "asking [him] to review resumes, scheduling of interviews and reminding the whole team for feedback post interviews." *Id.* A reasonable juror could find that these kinds of ministerial tasks do not involve "discretion" or "independent judgment" on "matters of significance." If they were Santamaria's primary duties, then she falls within the protection of the statutes.

Finally, the general theme of Defendants' briefing is that when Santamaria was hired, she overstated her qualifications and was "evidently unqualified to perform all the duties of Human Resources Director." Dkt. 44 at 3. So even Defendants seem to admit that while Vee Technologies might have hoped that Santamaria could be a true-blue HR director who exercised discretion and judgment on hiring, firing, and employee management, she ended up functioning as little more than Smith's assistant.

On this record, the Court holds that there are issues of material fact regarding Santamaria's primary duties. Summary judgment is therefore denied. *See Difilippo v. Barclays Cap., Inc.*, 552 F. Supp. 2d 417, 425 (S.D.N.Y. 2008) (denying summary judgment on issue of whether the plaintiffs' work was exempt because "Plaintiffs concede that, as Analysts, they had some judgment and discretion, but Plaintiffs submit that, contrary to Barclays's position, a sufficient portion of an Analyst['s] duties involved tasks with no significant judgment and discretion and that these non-discretionary duties significantly outweighed any Analysts' duties involving judgment and discretion."); *see also Trimmer v. Barnes & Noble, Inc.*, 31 F. Supp. 3d 618, 624 (S.D.N.Y. 2014).

## V.    WTPA claims

Defendants move for summary judgment with respect to Santamaria's WTPA claims. The WTPA provides that employers must "furnish each employee with a statement with every payment of wages," that includes certain information regarding the employer, the employee, and the employee's wages. N.Y. Lab. Law § 195(3). The WTPA also requires employers to furnish certain specified information "at the time of hiring." *Id.* § 195(1)(a). An employer's failure to provide these statements may result in specified statutory damages. *Id.* § 198.

Defendants argue that Santamaria's claims must be dismissed because there is no evidence that she suffered an injury. "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). To pursue a WTPA claim in federal court, a plaintiff cannot simply "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* If the statutory violation involves "informational injury," she must identify "downstream consequences from failing to receive the required information" because "informational injury that causes no adverse effects cannot satisfy Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) (internal quotation marks omitted).

Therefore, to have standing to bring a WTPA claim, Santamaria must show that she suffered an injury stemming from the statutory violation. *See Chen v. Lilis 200 W. 57th Corp.*, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023) ("In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation."); *see also Neor v. Acacia Network, Inc.*, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) ("Plaintiffs here lack standing because they fail to demonstrate how the lack of accurate wage notices and statements led to either a tangible injury or something akin to a traditional cause of action." (internal quotation marks omitted)).

Santamaria claims that she suffered an injury because she was misclassified and therefore underpaid. So, according to Santamaria, the informational harm—the fact that she wasn't advised that she was due overtime if she worked overtime hours—led to a concrete injury here. That is, Santamaria didn't know she was supposed to be paid overtime, and so she lost out on the ability to advocate for it and be paid according to the law's requirements. *See Frazier v. FCBC Cmty. Dev. Corp.*, 2023 WL 8602914, at *3 (S.D.N.Y. Dec. 12, 2023). And, as the Court already explained, there are issues of fact concerning whether Santamaria was misclassified and was in fact required to receive overtime.

Defendants also claim that Santamaria received all the information that was required under § 195(1). But § 195(1) requires employers to furnish an employee their overtime rate of pay. To the extent that Santamaria was misclassified, she was not provided any notice of her overtime rate.

## CONCLUSION

As explained above, Defendants' motion is GRANTED with respect to Santamaria's claims for failure to engage in an interactive process under the ADA and NYSHRL. Defendants' motion is otherwise DENIED. No later than March 29, 2024, the parties should file a joint letter providing their availability for trial in May or June 2024.

The Clerk of Court is directed to terminate Dkt. 42.


SO ORDERED.

Dated: March 21, 2024
    New York, New York

                                             _____
                                              ARUN SUBRAMANIAN
                                       United States District Judge